IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM KUBSH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 17-CV-73-SMY |
| | ) |
| UPS RETIREMENT PLAN and | ) |
| ADMINISTRATIVE COMMITTEE OF | ) |
| THE UPS RETIREMENT PLAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| AND | ) |
| | ) |
| DAVID HAISLAR, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 19-CV-213-SMY |
| | ) |
| UPS RETIREMENT PLAN and | ) |
| ADMINISTRATIVE COMMITTEE OF | ) |
| THE UPS RETIREMENT PLAN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court are the parties' cross Motions for Summary Judgment (Docs. 69, 71, 110, and 123) and responses (Docs. 76, 80, 114, and 115). For the following reasons, Plaintiffs' Motions are **DENIED** and Defendants' Motions are **GRANTED**.

## Procedural History

Plaintiffs Tom Kubsh, Rich Buck, Sherry Gatewood, David Haislar, Laurie Kolmer Eihausen, Dan Leavitt, Julie Loy, Susan Martinez, Steven Neff, John Neumeyer, John Rooney, and Thomas Wilkerson ("the Kubsh Plaintiffs") filed the instant action pursuant to the Employee

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B) on January 25, 2017 seeking clarification of their rights to future pension benefits provided by the UPS Retirement Plan and administered by the Administrative Committee of the UPS Retirement Plan (Doc.1). Plaintiffs Haislar, Martinez, and Neff ("the Haislar Plaintiffs") subsequently retired and sought and were denied the benefits claimed through an administrative appeal. Thereafter, the Haislar Plaintiffs filed a new lawsuit asserting a claim for wrongful denial of benefits (19-cv-213-SMY). The two cases were consolidated on May 7, 2019 (Doc. 100).

Prior to consolidation, the Court concluded that Plaintiffs' claim seeking clarification of future benefits is a question of statutory interpretation that does not require a factual record (Doc. 61, citing *Janowski v. Int'l. Broth. Of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931 (7th Cir. 1982), vacated on other grounds, 463 U.S. 1222 (1983)). As such, Plaintiffs were not required to exhaust administrative remedies as to the clarification of future benefits. Following consolidation, the Haislar Plaintiffs and Wilkerson (who had also retired and started receiving pension benefits) filed an Amended Complaint (Doc. 108).[1]

**Factual Background**

The following facts are undisputed: Plaintiffs were employees of Transentric, a division of Union Pacific Corporation ("UP"), from prior to 1989 to a period between October 8, 2001 to January 20, 2002 (except for Eihausen who is the widow of former employee David Kolmer) and were participants in the Union Pacific Pension Plan for Salaried Employees of Union Pacific Corporation and Affiliate ("UP Plan") (Doc. 70-8). On January 29, 2001, the UP Plan was amended to exclude Transentric employees from coverage as of January 31, 2001:

---

[1] For purposes of this Order, all Plaintiffs are referred to collectively unless otherwise noted.

> Sec. 2.21 "Covered Employee" shall mean each Employee in the employ of an Employer (while such entity is an Employer) in the United States (or employed outside of the United States, if compensated with United States funds), other than . . . . (d) any person employed by the Transentric division of the Company after January 31, 2001, whether or not employed by such division before February 1, 2001, provided, however that this exclusion (d) shall no longer apply to any person employed by Transentric, LLC after February 29, 2004, whether or not employed by Transentric, LLC before March 1, 2004.

(Doc. 70-8, p. 23; Doc. 70-2, pp. 1-3).[2]

Between October 2001 and January 2002, Plaintiffs became employees of Overnite Transportation Company ("Overnite") and participants in its Plan, The Retirement Plan for Employees of Overnite ("Overnite Plan"). However, there was no break-in-service between Plaintiffs' employment with Transentric and Overnite.

The Overnite Plan provides, in relevant part:

> A 'Covered Employee' shall mean each person in the employ of the Employer."

(Doc. 70-11, pp. 11, 13).

> Sec. 4.02 <u>Credited Service</u>
>
> Except as provided . . . in Article XI for an Employee who is transferred . . . a Participant shall be credited with one (1) year of Credited Service for each Computation Period during which he completes at least 1,000 Hours of Service as a Covered Employee . . . .

(Doc. 70-11, Section 4.02, p. 26)

Article XI, "Transfers into Plan from Other U.S. Plan," concerns employees who are a "Covered Employee" of Overnite on or after January 1, 1998:

> If an Employee who is a participant in any other qualified defined benefit pension plan of an Affiliate Company . . . is transferred to the Employer and is a Covered Employee after such transfer, such Covered Employee shall become a Participant and receive benefits under this Plan based upon his Credited Service, which shall include any service used in determining benefits for such Employee under such other qualified defined benefit pension plan.

---

[2] A "Participant" of the UP Plan includes "any person who has been or who is a Covered Employee and who has been admitted to participation in this Plan pursuant to the provisions of Article III . . . ." (Doc. 70-8, p. 32).

(Doc. 70-11, Section 11.01(b), p. 60).

Union Pacific and Overnite were affiliated companies at the time of Plaintiffs' employment by Overnite. The Overnite Plan does not define "transfer" or "participant" as those words are used in Section 11.01.

On December 19, 2001, Kubsh sent an email to the remaining Plaintiffs, Buck, Gatewood, Haislar, Kolmer, Leavitt, Loy, Martinez, Neff, Neumeyer, Rooney, and Wilkerson, noting Overnite's position that their participation in the UP Plan ended on January 31, 2001 and that their pension calculations would be based on service and earnings with Overnite pursuant to the Overnite Plan formula (Doc. 70-10). Thereafter, Plaintiff Loy was informed via email from Overnite on January 14, 2002 that while her employment at Transentric counted towards the vesting of her pension under the Overnite Plan, it did not count towards the Overnite Plan's pension formula (which uses "Credited Service" to determine the exact dollar amount of pension benefits she would receive monthly in retirement) (Doc. 70-9, p. 2). A letter from Patricia T. Clapp, the Director of Employee Benefits for Overnite, confirmed that Plaintiffs' years of service at Transentric counted towards when their pension vested but did not count towards "Credited Service" used to calculate the actual amount of pension benefit (Doc. 70-12).[3] The letter was sent to Plaintiffs Buck, Haislar, Kubsh, Loy, Martinez, Neff, Wilkerson and Leavitt on August 21, 2002 (*Id.*; Doc. 70-9, p. 8).[4]

United Parcel Service acquired Overnite on August 5, 2005, and Plaintiffs became

---

[3] This letter states that: "Because you transferred from a 'non-covered' affiliate (i.e. you were not covered under a pension plan just prior to your transfer to Overnite) your retirement plan" would only credit the time that they worked for Overnite in calculating "Credited Service." (Doc. 70-12).

[4] The Court has not searched the record to determine if Plaintiffs Gatewood, Kolmer, Neumeyer, and Rooney received such a letter. However, it follows that they also received a letter as they are in the same interested group as the other Plaintiffs.

employees of United Parcel Service and participants in The UPS Retirement Plan ("UPS Plan") beginning on January 1, 2006.[5] The UPS Plan provides in relevant part: employees become a "Participant" under the plan once they have reached the age of 21 and have completed 1,000 hours of service for UPS in the preceding 12-month period (Doc. 123-1, p. 37); "[e]ach Grandfathered Overnite Participant and Grandfathered Motor Cargo Participant shall become a Participant as of January 1, 2006" (Doc. 123-1, pp. 28, 30); the amount of pension benefits an employee accrues depends on "Benefit Service" which means "the number of a Participant's years . . . of [ ] employment" with UPS (Doc. 123-1, Section 1.1(h), p. 14); no "Benefit Service" is accrued "with respect to employment with an Employer Company prior to the date it first becomes an Employer Company" except as otherwise stated in the UPS Plan.

Because Plaintiffs' employment with UPS was the result of an acquisition, Appendix J to the UPS Plan applies (Doc. 123-1, p. 16; 144-48):

> Wherever used herein or in the main text of the Plan with respect to an Overnite Employee, the following capitalized terms shall have the meaning set forth below unless otherwise clearly required by the context. If a capitalized term used in this Appendix J or in the main text of the Plan, is not defined herein it will have the same meaning assigned to such term in the main text of the Plan.
>
> <u>Active Participant</u> means as of any point in time, an Overnite Participant who at that point is or was eligible to accrue a benefit under either the Overnite Plan or this Plan, as applicable.
>
> <u>Benefit Service</u> as defined in the main text of the Plan shall include:
>
>> (a) each full year of "credited service" completed on or before December 31, 2005; other than service that is disregarded under Section 9.02 of the Overnite Plan;[6] and

---

[5] Defendants UPS Retirement Plan and Administrative Committee of the UPS Retirement Plan are collectively referred to as "UPS."

[6] Section 9.02, concerning benefits upon reemployment does not apply to this case (Doc. 70-11, pp. 50-51).

> (b) for each Overnite Participant who completed at least one "hour of service" during his or her "computation period" for "credited service" that began in 2005, one year of Benefit Service.
>
> The terms "credited service," "computation period," and "hour of service" have the meaning assigned to such terms in the Overnite Plan.

(Doc. 123-1, p. 144).

By letter from Plaintiffs' counsel to UPS dated October 14, 2016, Plaintiffs questioned UPS about why their employment at Transentric was not being used to calculate their pension benefits in 2014 (Doc. 70-3, p. 6).[7] Thereafter, the Haislar Plaintiffs applied for pension benefits and claimed additional benefits based on their employment with Transentric; the claim was denied. The Haislar Plaintiffs appealed, and the appeal was denied by UPS on February 26, 2018 as follows:

> In light of all of the evidence (both supporting and contradicting the claims of Mr. Haislar and Mr. Neff), the UPS Retirement Plan agrees with the prior contemporaneous conclusion of the Overnite Plan that these changes in employment were not 'transfers' of 'participants' for purposes of Section 11.01(b) of the Overnite Plan, and therefore service of these individuals during their time at Transentric is not 'Credited Service' under Section 4.01 of the Overnite Plan or therefore Benefit Service under Section 1.1(h) of the UPS Retirement Plan.

(Doc. 70-3, pp. 163-172).[8]

## Discussion

Plaintiffs claim that based on the language and definitions contained in the above-referenced ERISA Plans, they are entitled to credit for their years of service with Transentric towards "Benefit Service" under the UPS Plan. UPS argues that none of the plan language entitles

---

[7] It is unclear whether UPS responded to this 2016 letter or the Plaintiffs' inquiry in 2014.

[8] The reference to Section 4.01 to the Overnite Plan, discussing "Vesting Service", appears to be in error as it is Section 4.02 that discusses "Credited Service" which is at the heart of the dispute in this lawsuit (Doc. 70-11, p. 26). Section 1.1(h) of the UPS Plan defines "Benefit Service" (Doc. 123-1, p. 14).

Plaintiffs to such credit, that the UPS Plan does not violate ERISA, that Plaintiffs filed suit too late, and that, in any event, UPS' subsequent determination that the Haislar Plaintiffs are not entitled to all the benefits they claim should be upheld.

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Defendants first argue that the Kubsh Plaintiffs are judicially estopped from pursuing any claim other than that the UPS Plan violates ERISA's prohibition against "claw back" amendments that would decrease accrued benefits. *See* 29 U.S.C. § 1054(g)(1) (Doc. 70).[9] This argument is misplaced and rejected. The cases cited by Defendants in support of their position all involve a determination of whether a plan administrator wrongly interpreted an ERISA plan. The issue before this Court with respect to the Kubsh Plaintiffs is what future benefits they are entitled to under the UPS Plan, irrespective of UPS' interpretation of the Plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). As such, Plaintiffs' claim is properly before the Court regardless

---

[9] This section provides:

> The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.

Neither 29 U.S.C. § 1082(d) (discussing the date when an amendment is effective) nor 29 U.S.C. § 1441 (discussing benefits under terminated plans) apply to this matter.

of whether they can show that the UPS Plan improperly claws back benefits or violates a specific provision of ERISA.  *See Janowski*, 673 F.2d at 935; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (finding ERISA allows a plaintiff to "bring suit generically to . . . clarify any of his rights to future benefits.").

Next, Defendants argue that the Kubsh Plaintiffs' claim was filed beyond the applicable statute of limitations.  Because ERISA does not contain a limitations period for filing suit, the most analogous state statute of limitations applies – in this case, Illinois' 10-year limitations period that applies to contract disputes.  *See Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 64 (7th Cir.  1996).  Relatedly, federal common law dictates when such a claim accrues.  *Id*. "The general federal common law rule is that an ERISA claim accrues when the plaintiff knows or should know of conduct that interferes with the plaintiff's ERISA rights."  *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 817 (7th Cir. 2010) (additionally stating that a claim to recover benefits accrues "'upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary.'" (quoting *Daill*, 100 F.3d at 66)).

Plaintiffs certainly knew or should have known in 2002 that the Overnite Plan was being interpreted to limit their pension benefits.  However, they could not have known, without a crystal ball, that UPS would acquire Overnite and would incorporate the Overnite Plan terms to calculate pension benefits under the UPS Plan.  The record before the Court reveals only that in 2014, Plaintiffs sought and thereafter challenged a determination that they were not entitled to the benefits they are seeking.  *See Daill*e, 100 F.3d at 66 (finding that the plaintiff's claim accrued when he informally demanded benefits, which were denied, and then challenged that denial, all prior to formally applying for benefits).  Thus, on the record before the Court, Plaintiffs' claims are timely.

The parties next argue about the standard the Court should employ in interpreting the UPS Plan – Defendants argue that this Court should adopt the Plan Administrator's decision as set forth in the February 26, 2018 letter to Haislar and Neff. Plaintiffs, on the other hand, urge *de novo* review. Both positions are incorrect. Whether UPS appropriately interpreted the UPS Plan is not relevant to the Court's consideration of the claims asserted in 17-CV-73 seeking clarification of entitlement to future benefits. Rather the Court's determination involves basic contract interpretation, and the terms in an ERISA plan are "interpreted in an ordinary and popular sense as they would be understood by a person of average intelligence and experience" and "[w]here terms are ambiguous, courts construe them in favor of coverage." *Tran v. Minnesota Life Insurance Company*, 922 F.3d 380, 383 (7th Cir. 2019) (quotation marks and citations omitted). "The plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." *Estate of Jones v. Children's Hospital and Health System Incorporated Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018) (quotation marks and citations omitted).

In that vein, Plaintiffs entitlement to pension benefits under the UPS Plan based on their years of service with Transentric is dependent on whether those years are the equivalent of "Benefit Service." By the UPS Plan terms, Plaintiffs became "Participants" in the UPS Plan, thereby accruing "Benefit Service", on January 1, 2016. And, because of their status as former Overnite employees, the UPS Plan also gives them credit for the "Credited Service" they accumulated under the Overnite Plan, which includes service in an affiliated companies' pension plan *if that employee was a participant in that plan*. It is undisputed that when Plaintiffs began their employment with Overnite they were not active participants in a relevant pension plan – the UP Plan. Therefore, they received no "Credited Service" towards their Overnite Plan pension for the years of service

at Transentric. It follows, then, that under the UPS Plan, they would receive no "Benefit Service" for their years of service at Transentric.

Plaintiffs, however, argue for a different interpretation based on the definitions of "transfer" and "participant" as used in Sections 4.02 and 11.01 of the Overnite Plan. Specifically, pointing to various emails and letters from Overnite, they argue that they were "transferred" from Transentric to Overnite while they were participants in the UP Plan, that as a result, they are entitled to "Credited Service" under the Overnite Plan for their years at Transentric and, consequently, entitled to "Benefit Service" under the UPS Plan. Defendants counter that whether Plaintiffs were "transferred" is at least a question of fact.

The Court's reliance on extrinsic evidence to interpret the Plans at issue is warranted only if the terms of said Plans are ambiguous. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 873 (7th Cir. 2001) ("Contract language is ambiguous if it is susceptible to more than one reasonable interpretation. If a district court determines that the provision is without ambiguity, we have noted that it need not consider extrinsic evidence and should proceed to declare the meaning." (quotation marks and citations omitted)).

The word "transfer" is not ambiguous, and the Court need not look beyond the four corners of the Plan for its meaning. With respect to Section 11.01 of the Overnite Plan, transfer obviously refers to a seamless transition from participation in one pension plan to the Overnite Plan. In this context, transfer is tied to participation in a "qualified defined benefit pension plan." And, the term cannot be expanded to include a change in employer as advocated by Plaintiffs. It is undisputed that Plaintiffs were not participating in a pension plan when they commenced employment with Overnite. As such, they are not subject to Section 11.01 of the Overnite Plan and are not entitled to "Credited Service" at the time of their employment with Overnite for their

years of employment with Transentric.

Additionally, Plaintiffs equate "participants" as used in Section 11.01 with the term "Participants" as defined in each of the Plans. This argument fails as well. The meaning of the word participant in the UPS Plan or the Overnite Plan cannot depend on the definition of "Participant," a specifically defined term in all three Plans.[10] Instead, it must be given its plain and ordinary meaning; an active and current employee who was accruing a benefit or credit under a relevant pension plan. Plaintiffs were not so, once they ceased being Transentric employees.

Finally, Plaintiffs argue that "participants" should be interpreted as defined by ERISA:

> [a]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). They contend that for purposes of this definition, "employer" applies to Union Pacific/Transentric, and therefore, they are entitled to some vested pension benefits in the UP Plan. But this generic definition cannot save Plaintiffs because it is at odds with the Overnite Plan as a whole. Section 11.01(b) refers to an employee who "is a participant," i.e. an active participant in a pension plan and not the type of former or potential participant covered by the general ERISA definition or the defined term "Participant."[11]

Accordingly, the Court finds that the UPS Plan does not entitle Plaintiffs to "Benefit Service" for the years that they worked for Transentric. Thus, they are not entitled to future pension benefits that would consider those years when calculating a pension amount. And, given

---

[10] In the Overnite Plan, "Participants" is defined as "any person who has been or who is a Covered Employee and who has been admitted to participation in this Plan . . . ." (Doc. 70-11, Section 2.41, p. 22). It includes "Active Participants," "Inactive Participants," and "Vested Participants." Each of the other Plans contain a similar definition of "Participants."

[11] This Court offers no opinion on whether Plaintiffs are entitled to pension benefits under the UP Plan.

this conclusion, Plaintiffs Haisler, Martinez, Neff, and Wilkerson's claim for wrongful denial of benefits must fail.

## Conclusion

For the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 69 and 110) are **GRANTED** and Plaintiffs' Motions for Summary Judgment (Docs. 71 and 123) are **DENIED**. The Clerk of Court is DIRECTED to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: March 31, 2021

**STACI M. YANDLE**
**United States District Judge**